**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES PRAY,**

              **Plaintiff,**

              v.

**CORRECTION OFFICER**
**FREDERICK BREYETTE,**

              **Defendant.**
_____

**9:20-cv-1585**
**(GLS/ATB)**

## SUMMARY ORDER

Plaintiff Charles Pray commenced this action against defendant Correction Officer Frederick Breyette alleging an Eighth Amendment excessive force claim pursuant to 42 U.S.C. § 1983.[1] (Compl., Dkt. No. 1.) Now pending is Breyette's motion for summary judgment. (Dkt. No. 24.) For the reasons that follow, the motion is denied.

At all relevant times, Pray was incarcerated at Clinton Correctional Facility (CCF), where Breyette was employed as a Correction Officer. (Def.'s Statement of Material Facts (SMF) ¶¶ 1-2, Dkt. No. 24, Attach. 3.)[2]

On July 21, 2018, Pray was involved in an assault of another inmate

---

[1] Pray also alleged Fourth, Fifth, and Fourteenth Amendment violations, however, the parties stipulated to the dismissal of those claims. (Dkt. No. 9.)

[2] Unless noted otherwise, the facts are undisputed.

"in the north yard flats" of CCF.  (*Id.* ¶ 3.)  "Breyette responded to the assault and was the first officer to arrive at the scene."  (*Id.* ¶ 4.)  The parties disagree about what transpired thereafter.  Breyette contends that he first "ordered [Pray] to cease assaulting the other" inmate, and that Pray failed to comply with his order.  (*Id.* ¶ 5.)  Due to Pray's noncompliance, and in order to "stop the violent attack, protect the [inmate] being assaulted, and keep the facility at large safe," Breyette "utilized force"[3] against Pray and "was able to gain control of the situation."  (*Id.* ¶¶ 6-7.)

Pray disputes Breyette's narrative, asserting that he was "ordered to stop fighting by loudspeakers" and that he fully complied with the order by laying down.[4]  (Pl.'s SMF ¶ 1,[5] Dkt. No. 29.)  Pray further contends that "Breyette failed to give sufficient time for [him] to comply . . . prior to repeatedly striking [him] with his baton in the head."  (*Id.*)  Pray also disputes that it was necessary for Breyette to use the degree of force that

---

[3] Breyette maintains that he struck Pray with his baton "twice in the mid-back and shoulder area," and then a third time, unintentionally, in the head.  (Dkt. No. 24, Attach. 4 ¶¶ 13-15.)

[4] Pray appears to contradict his own assertion by also claiming that he was not given enough time to comply with Breyette's order before being struck.  (Pl.'s SMF ¶ 1.)

[5] Pray did not respond to Breyettes's statement of material facts "in matching numbered paragraphs" as required by Local Rule 6.1(b).  Because the court can discern his intention, Pray's technical noncompliance is excused in this instance.

he did.  (*Id.* ¶ 2.)

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

Breyette seeks summary judgment on Pray's Eighth Amendment claim because "there was no malicious use of force by . . . Breyette," he "acted in good faith to restore order and keep C[CF] safe by ending the assault on another incarcerated individual," and, alternatively, that he is shielded by qualified immunity.  (Dkt. No. 24, Attach. 1 at 3-9.)  Pray argues that issues of fact preclude summary judgment.  (Dkt. No. 30 at 2-11.)

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII.  "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials."  *Randolph v. Griffin*, 816 F. App'x 520, 522 (2d Cir. 2020) (internal quotation marks and citations omitted).

Eighth Amendment excessive force claims have both an objective and subjective component. *See id.* at 523*; see also Harris v. Miller*, 818 F.3d 49, 63-65 (2d Cir. 2016). With respect to the subjective component, a plaintiff must show "that the defendant acted with a subjectively sufficiently culpable state of mind." *Harris*, 818 F.3d at 63 (internal quotation marks and citation omitted). In making such a determination a court will consider: (1) "the extent of the injury and the mental state of the defendant"; (2) "the need for the application of force;" (3) "the correlation between that need and the amount of force used;" (4) "the threat reasonably perceived by the defendant[]; and" (5) "any efforts made by the defendant[] to temper the severity of a forceful response." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (citation omitted).

Regarding the objective component, the conduct must be "objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Harris*, 818 F.3d at 64 (internal quotation marks and citation omitted). "The objective component of the Eighth Amendment test is . . . context specific, turning upon contemporary standards of decency." *Id*. (internal quotation marks and citation omitted). However, "malicious use of force to cause harm, constitute[s an] Eighth Amendment violation[] *per se* . . . . [B]ecause

4

when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* (citations omitted).

Here, there are disputes regarding both the timing of Breyette's use of force, and the necessity of the degree of force he used, which preclude summary judgment.  Regarding the timing of Breyette's use of force, Breyette claims that he used force only after Pray refused to comply with his order to stop assaulting the other inmate.  (Dkt. No. 24, Attach. 4 ¶ 13.) However, Pray contends that Breyette did not give him sufficient time to comply with his orders before striking him, (Pl.'s SMF ¶ 1), a claim that is at least partially supported by the fact that Breyette was internally disciplined for that reason, (Dkt. No. 28, Attach. 4 ¶ 3; *see id.*, Attach. 5). A silent video recording of the incident sheds no light on the timing of when, if at all, Breyette ordered Pray to stop assaulting the other inmate in relation to when he struck Pray.  (Dkt. No. 24, Attach. 5 Ex. A.)

With respect to the necessity of the degree of force used, Breyette claims that "use of force became necessary" in order to protect both "the individual being attacked" and all of CCF.  (Dkt. No. 24, Attach. 4 ¶¶ 13, 16.)  Further, Breyette asserts that he issued two strikes to Pray's back

5

and shoulder region with his baton, and only issued a third strike, which allegedly inadvertently stuck Pray on the head, because the first two strikes "did not have the desired effect" on Pray. (*Id.* ¶¶ 13-15.) Pray disputes the necessity of the degree of force used by Breyette for several reasons, (Pl.'s SMF ¶ 2), including that two other corrections officers who witnessed the assault testified that the assault posed no threat to any of the corrections officers present, (Dkt. No. 28, Attach. 8 at 10; *id.*, Attach. 9 at 12), one of the witnessing officers testified that lesser means of force could "possibly" have been "practical" to use to address the assault, (*id.*, Attach. 9 at 13), and because the manner in which Breyette used his baton violated a New York State Department of Corrections and Community Supervision directive, which limits the use of baton strikes in general, and, to a greater degree, limits strikes to the head, (Pl.'s SMF ¶ 2; *see* Dkt. No. 28, Attach. 1). Pray's assertions that the manner in which Breyette used his baton was excessive, and that he should have attempted to first exert some lesser degree of force are supported by the fact that Breyette was internally disciplined for these reasons. (Dkt. No. 28, Attach. 4 ¶¶ 1-2; *see* Dkt. No. 28, Attach. 5.)

      Turning to Breyette's qualified immunity argument, because

6

"[s]ummary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant 'show[s] that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law,'" *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (quoting *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001)), that defense is unavailable at this juncture in light of the factual disputes highlighted above.

Accordingly, it is hereby

**ORDERED** that Breyette's motion for summary judgement (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED** that this case is deemed trial ready and the court, in due course, shall issue a trial scheduling order; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

December 6, 2022
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge